O

# United States District Court
# Central District of California

| | |
|---|---|
| LILIAN GARZA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>FORD MOTOR COMPANY et al.,<br><br>　　　　　　Defendants. | Case № 2:18-cv-07874-ODW (JEMx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [16]** |

## I.　INTRODUCTION

Before the Court is Defendant Ford Motor Company's ("Ford") Motion for Summary Judgment ("Motion") on Plaintiff Lilian Garza's ("Garza") Complaint in this Lemon Law litigation.  (Mot. for Summ. J. ("Mot."), ECF No. 16.)  For the reasons that follow, the Court **GRANTS** Ford's Motion.[1]

## II.　BACKGROUND

The following facts are undisputed and supported by evidence in the record.

### A.　The Vehicle

On August 14, 2016, Garza purchased a new 2017 Ford Fusion, VIN 3FA6P0G72HR105424 (the "Fusion").  (Def.'s Statement of Uncontroverted Facts

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

("SUF") 1, ECF No. 16-2.) In November and December 2017, Garza contacted Ford complaining of ongoing problems with the Fusion and asked for a buyback. (Pl.'s Statement of Add'l Material Facts ("AMF") 31, 35, ECF No. 18-9.) On January 8, 2018, Ford sent Garza a letter with a "conditional offer of settlement," offering to replace or repurchase the Fusion. (SUF 3.) As Garza is a Spanish-speaker, her brother-in-law who reads and speaks English fluently read the letter to Garza in Spanish. (AMF 51; SUF 4.) On or around January 31, 2018, Ford sent Garza a refund worksheet. (SUF 6.) Garza did not accept Ford's offer to repurchase or replace the Fusion. (SUF 7.) Garza was very angry, thought the refund worksheet offer was "unjust," and "was going to hire an attorney." (SUF 13.)

**B.     The Bankruptcy**

On March 1, 2018, one month after Ford sent Garza the refund worksheet, Garza filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Central District of California, case number 2:18-bk-12310-ER ("Bankruptcy Action"). (Def.'s Req. for Judicial Notice ("DRJN") Ex. 9 ("Bankruptcy Petition"), ECF No. 16-13.[2]) In her Bankruptcy Petition, Garza did not disclose any claims against Ford as a potential asset. (SUF 15.) Under Question No. 33, which directs the debtor to list any "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment," Garza checked "None." (SUF 16; Bankr. Pet. at 15 of 63.) Garza amended her bankruptcy schedules on April 3, 2018, but again checked "None" in response to Question No. 33 and did not disclose any claims against Ford. (SUF 17; DRJN Ex. 11 ("Am. Schedules") at 7 of 10, ECF No. 16-15.) On June 4, 2018, the Bankruptcy Court granted Garza a discharge under Chapter 7 in the

---

[2] Ford requests judicial notice of the Bankruptcy Petition, Amended Schedules, Bankruptcy Discharge, and the Bankruptcy Action's docket report. (*See* DRJN Exs. 9–12, ECF No. 16-22.) Garza does not oppose. As the documents are filings and a public record of a judicial proceeding with a direct relation to the present matter, the Court **GRANTS** Ford's request. *See Reyn's Pasta Bella v. Visa USA*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."); *see also* Fed. R. Evid. 201. Garza also requests that the Court take judicial notice of eight documents. (*See* Pl.'s RJN Exs. A–H, ECF No. 18–10.) As these documents are not pertinent to the Court's disposition of the Motion, Garza's request is **DENIED**.

Bankruptcy Action. (SUF 20; DRJN Ex. 12 ("Bankr. Discharge"), ECF No. 16-16.) At no time before the Bankruptcy Action was dismissed did Garza disclose in her bankruptcy filings that she had claims against Ford or that Ford made an offer to repurchase or replace the Fusion. (SUF 18–19.) Garza has not corrected her bankruptcy filings to include her claims against Ford. (SUF 21; DRJN Ex. 10 ("Bankr. Docket"), ECF No. 16-14.)

**C.  The Lawsuit**

On August 8, 2018, two months after the Bankruptcy Court discharged her debts, Garza initiated this lemon law action against Ford. (*See* Notice of Removal Ex. A ("Compl."), ECF No. 1-1.) Garza asserts three claims under the Song-Beverly Consumer Warranty Act ("Song-Beverly"), California Civil Code sections 1790 *et seq.*, for (1) breach of express warranty; (2) breach of implied warranty, and (3) violation of section 1793.2. (Compl. ¶¶ 15–55.) Ford now moves for summary judgment or partial summary judgment on Garza's claims. (*See* Mot.)[3]

### III.  LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or

---

[3] Garza objects to Ford's Supplemental Declaration of Craig A. Taggart and its Exhibit 2. (Pl.'s Obj., ECF No. 21.) The Court relies on neither in the disposition of the Motion and therefore does not reach Garza's objection.

speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu*, 198 F.3d 1134.

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp.*, 477 U.S. at 322–23; *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Nor will "uncorroborated and self-serving" testimony create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). A "non-moving party must show that there are 'genuine factual issues that properly can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party*.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Id.* (citing *Matsushita Elec. Indus.*, 475 U.S. at 586–87). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

### IV. DISCUSSION

Ford moves for summary judgment on several grounds, including that Garza's claims are barred by the doctrine of judicial estoppel because the undisputed facts establish she failed to disclose any pending or future claims against Ford in her Bankruptcy Action. (Mot. 2–3, 7–11.) As the Court finds this issue dispositive, it does not reach Ford's remaining arguments for summary judgment.

### A. Judicial Estoppel

Judicial estoppel is an equitable doctrine invoked at the court's discretion that "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Judicial estoppel "protect[s] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 749–50 (citation and internal quotation marks omitted). The Supreme Court has identified the following factors that should "inform the decision whether to apply the doctrine in a particular case:" (1) "a party's later position must be 'clearly inconsistent' with its earlier position"; (2) the party succeeded in persuading the first court to accept their earlier position; and (3) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750–51.

In the bankruptcy context, judicial estoppel bars a cause of action when "a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge." *Ah Quin v. Cty. of Kauai Dep't of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013). "Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 784 (9th Cir. 2001). "The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding." *Id.* at 785 (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999)).

First, Garza's position here, that she has viable claims against Ford, is plainly inconsistent with her earlier position in the Bankruptcy Action that she had no such potential claims. *See id.* at 784 (finding that plaintiff "clearly asserted inconsistent positions" by failing to list the potential claims as assets on bankruptcy schedules and

later pursuing the same claims). Second, the bankruptcy court accepted Garza's earlier position because it relied on her nondisclosures when it discharged her debts. *See id.* ("The bankruptcy court may 'accept' the debtor's assertions by relying on the debtor's nondisclosure of potential claims . . . ."). Third, Garza would derive an unfair advantage if permitted to assert this inconsistent position because she obtained the Bankruptcy Discharge based on her false assertion that she had no potential claims. *See Ah Quin*, 733 F.3d at 271 (finding that "unfair advantage" includes "discharge . . . without allowing the creditors to learn of the pending lawsuit"); *Hamilton*, 270 F.3d at 785 (finding unfair advantage where plaintiff enjoyed "the benefit of both an automatic stay and a discharge of debt in his Chapter 7 bankruptcy proceeding"). Accordingly, on the undisputed facts, the Court finds the *New Hampshire* factors favor judicial estoppel.

### B. Mistake/Inadvertence

Garza argues that judicial estoppel should not apply because her omission of the claims against Ford from her bankruptcy schedules was inadvertent. (Opp'n to Mot. ("Opp'n") 7–9, ECF No. 18.) The Supreme Court has noted that judicial estoppel may be inappropriate "when a party's prior position was based on inadvertence or mistake." *New Hampshire*, 532 U.S. at 753. Thus, where a plaintiff-debtor reopens "the bankruptcy proceedings and [corrects] the initial filing error," courts must consider whether the omission was inadvertent or mistaken, as those terms are commonly understood. *Ah Quin*, 733 F.3d at 276. However, "[w]hen a plaintiff-debtor has *not* reopened bankruptcy proceedings," the exception for mistake is narrow and courts "apply a presumption of deliberate manipulation." *Id.* at 272, 273. This presumption of deceit is "rebuttable only with proof that the plaintiff either did not know of the claim or had no motive to conceal it." *Wong v. Michaels Stores*, 648 F. App'x 594, 595 (9th Cir. 2016) (citing *Ah Quin*, 733 F.3d at 271).

Although Garza argues that the omission of her claims against Ford was inadvertent, she has not reopened her bankruptcy proceedings to disclose the claims

6

1  she alleges in this action.  Accordingly, the Court applies the presumption of
2  deliberate manipulation, as required by the Ninth Circuit.  *See Ah Quin*, 733 F.3d
3  at 272.  Garza does not attempt to rebut this presumption, instead relying on
4  application of the broader exception.  (*See* Opp'n 8–9.)

5       It is undisputed that Garza knew of her potential claims against Ford as early as
6  November 2017, when she called Ford and requested a buyback, or as late at January
7  2018, when Ford sent her a conditional settlement offer and the refund worksheet that
8  made her so angry she was "going to hire an attorney." (SUF 3, 6, 13; AMF 31.)  This
9  knowledge clearly predates her Bankruptcy Petition in March 2018 and her Amended
10 Schedules in April 2018.  Thus, Garza cannot establish that she did not know of the
11 potential claims.  As to motive, the Ninth Circuit has stated that "in practically all
12 bankruptcy cases, [p]laintiff[s] ha[ve] a motive to conceal the claim: keeping any
13 potential proceeds from creditors." *Ah Quin*, 733 F.3d at 272.  This motive applies
14 here, where Garza has not attempted to reopen the bankruptcy proceedings to disclose
15 the instant claims.  (*See* SUF 21; Bankr. Docket.)  Therefore, because she knew of the
16 existence of her claims against Ford and had a motive to conceal them, Garza fails to
17 rebut the presumption of deliberate manipulation.

18      Further, even if Garza reopened her bankruptcy case tomorrow and the more
19 forgiving standard applied, Garza fails to provide any support for her claims of
20 inadvertence.  Garza argues that she attempted to correct the initial omission "but her
21 lawyer never followed through." (Opp'n 8.)  For support, Garza offers a single
22 proposed fact, which states "she directed her bankruptcy attorneys to inform the
23 bankruptcy court about the claims against Ford." (AMF No. 49.)  Garza does not
24 submit a declaration to support this fact and instead relies exclusively on two excerpts
25 from her deposition.  (*See* AMF No. 49 (citing Decl. of Daniel Kalinowski Ex. 24
26 ("Garza Dep.") 23:10–19, ECF No. 18-8); Pl.'s Notice of Errata 2, ECF No. 22
27 (correcting citation to Garza Dep. 23:3–9, 26:7–21).)  However, the testimony does
28 not support the fact asserted.

The first cited testimony reads:

Q: So you didn't include the 2017 Fusion in the bankruptcy, and it's your understanding that's why Ford Credit took the vehicle?

A: The thing is that when I did my bankruptcy I told the attorney that I wanted to keep that car. At that time I was having problems with the car, and I was -- well, how could I say it? Well, that was it. I was just having problems with the car. And they saw that I had done a bankruptcy, but I did not include the car in that.

(Garza Dep. 22:25–23:1–9[4].) The second cited testimony reads:

Q: When you filed the bankruptcy did you know that you were supposed to disclose all of the assets that you had?
A: Yes. During the bankruptcy, yes.
Q: And did you disclose the fact that you had the Fusion in the bankruptcy?
A: At that time I did not tell them, but then later on I did tell the attorney. And that -- what the attorney said was that he was going to send some memos to the finance company. And then what happened was that the bankruptcy was closed, finished. And that's how it all happened.

(Garza Dep. 26: 7–21.) Neither excerpt directly supports the asserted additional fact, and it is simply not reasonable to infer that the testimony "I told the attorney that I wanted to keep that car" or "I did tell the attorney [that I had the Fusion]," actually meant "I told my attorney to inform the bankruptcy court about the claims against Ford." At best, this testimony supports that Garza told her bankruptcy attorney that she had the Fusion and wanted to keep it. Thus, even viewing this testimony in the light most favorable to Garza, no reasonable juror could find it supports that Garza's initial omission of her potential claims against Ford was a mistake.

Plaintiff relies on *Ah Quin* for the argument that her deposition testimony creates an issue of fact for the jury. (*See* Opp'n 8–9.) Garza's reliance is misplaced. In *Ah Quin*, the plaintiff submitted an affidavit that the initial omission was a mistake, along with other evidence supporting inadvertence, and the court explicitly relied on

---

[4] As Garza's excerpts do not include the complete question, the Court finds the remainder of the question at Declaration of Craig A. Taggart Ex. 3 ("Garza Dep.") 22:25, ECF No. 16-7.

the plaintiff's affidavit to find a question of fact existed. *Id.* at 277–78. Garza has raised no such question here.

The Court finds this case is more like *Dzakula v. McHugh*, where the court found that no evidence supported mistake. 746 F.3d 399, 401–02 (9th Cir. 2014). There, the plaintiff reopened bankruptcy proceedings only after the defendant filed a motion for summary judgment seeking judicial estoppel, and failed to provide any evidence that the initial omission was a mistake. *Id.* ("Plaintiff presented no evidence, by affidavit or otherwise, explaining her initial failure . . . Nor did [plaintiff] ever attempt to supplement the record with a declaration or any other evidence.") As in *Dzakula*, if Garza were to reopen her bankruptcy proceedings tomorrow, it would be in response to Ford's challenges to her omissions. And like the plaintiff there, Garza fails to submit a declaration or other evidence explaining how the initial omission was a mistake, instead relying exclusively on inapt deposition testimony. Thus, as in *Dzakula*, the Court finds Garza fails to support that her initial omission was a mistake.

Finally, Garza argues she is a woman of low education who speaks English as a second language, and her lack of sophistication creates a triable question of fact regarding the issue of mistake. (Opp'n 8.) She cites a footnote in *Ah Quin* that states estoppel may be inappropriate where "a litigant who is not represented by counsel or who speaks English as a second language . . . fails to include a claim on her bankruptcy schedule because she does not understand that she was required to do so." *Ah Quin*, 733 F.3d at 272 n.3. First, Garza was represented in her bankruptcy proceeding by counsel, whom the Court presumes understood what was required, and second, as discussed, Garza submits no facts or evidence to suggest her omission was the result of a failure to comprehend the requirements. Indeed, she argues (without support) that she *did* understand the requirements but her *attorney* failed to follow through. (Opp'n 8.) There must be more than a scintilla of evidence to survive summary judgment. *See Addisu*, 198 F.3d at 1134. Garza fails to offer even that scintilla. In light of Garza's "choice not to file a declaration explaining her initial

error, no reasonable fact-finder could conclude that the omission was inadvertent or mistaken." *Dzakula*, 746 F.3d at 402.

The Court finds there is no issue of fact as to whether Garza's omission was mistaken or inadvertent and the undisputed facts demonstrate that judicial estoppel applies to bar Garza's claims against Ford. Accordingly, no genuine dispute exists as to any material fact and Ford is entitled to judgment as a matter of law.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Ford's Motion for Summary Judgment. (ECF No. 16.)

**IT IS SO ORDERED.**

May 14, 2020

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**